**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARMELLA GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-17 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF ALLEGHENY, PA | ) | |
| (ALLEGHENY COUNTY JAIL) | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., Chief Judge.

Carmella George ("Plaintiff"), commenced this civil action against the County of Allegheny ("Defendant"), alleging violations of the Rehabilitation Act of 1973, ("the Rehab Act"), 29 U.S.C. 791 *et seq.*[1] and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Presently pending before the Court is the Defendant's Motion for Summary Judgment [ECF No. 40].[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I. **BACKGROUND**

Plaintiff was hired by the Defendant as a Correctional Officer ("CO") at the Allegheny County Jail in May 1998. Pl. Ex. 4 ¶ 3.[3] The Allegheny County Jail consisted of five levels, four of which contained inmates. *Id.* at ¶ 12. Level 1, the main level of the jail, did not house inmates, but included the reception and visitation areas, as well as the management and administrative offices. *Id.* at ¶¶ 11-12. The Job Description for a CO at the Allegheny County

---

[1] The Americans with Disabilities Act and the Rehab Act were amended in 2008 by the Americans with Disabilities Act Amendments Act ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553, 3559 (2008), which became effective on January 1, 2009. The ADAAA does not have retroactive effect, *see Weidow v. Scranton School Dist.*, 460 Fed. Appx. 181, 185 n.7 (3d Cir. 2012), and in any event, does not impact our analysis.
[2] Plaintiff stipulated to the dismissal of her FMLA claim (Count II) in Response to the Defendant's Motion for Summary Judgment. [ECF No. 50 n.1]. Accordingly, we shall grant summary judgment as to that claim and confine our discussion to the Rehab Act claim (Count I).
[3] Plaintiff's Exhibits are filed at [ECF No. 50]; Defendant's Exhibits are filed at [ECF No. 40].

1

Jail provided that a CO took "an active role in the daily operations of an inmate housing pod." Def. Ex. AA.  The regular CO position required frequent inmate contact and the ability to engage in strenuous physical activity, such as restraining inmates, pursuing fleeing inmates, and disengaging fights.  *Id*.  The record reflects that there were additional modified CO positions bearing the titles "Corrections Officer-Training Clerk-Modified Duty" and "Corrections Officer-X-Ray Monitor-Modified Duty."  Def. Ex. BB, ¶ 4; Def. Exs. X-Y.  The Training Clerk-Modified Duty CO position was classified as sedentary, and required the CO to answer telephone calls, file, process new employee identification tags, and copy documents.  Def. Ex. X.  The X-Ray Monitor-Modified Duty CO position was classified as light, and required the CO to perform monitoring and scanning duties while standing at the screen.  Def. Ex. Y.  Plaintiff, in her Affidavit, contends that there were other modified CO positions that were of a light duty nature, including Special Detail, Mezzanine, Classroom and Library.  Pl. Ex. 4 ¶ 27.

On March 19, 2008, Plaintiff called off sick.  Def. Ex. G.  On March 20, 2008, Plaintiff provided Lynda Pastor ("Pastor"), the Administrative Officer at the Allegheny County Jail, with a doctor's note from Rodney M. Kosanovich, D.P.M., stating that Plaintiff had been under his care for a "right foot mass" from March 19, 2008 to April 4, 2008 and was limited to "light duty, no inmate contact."  Def. Exs. C-D.  Plaintiff was informed by Pastor in a letter dated March 20, 2008 that Defendant was unable to accommodate her request for light duty.  Def. Ex. B.  Plaintiff was further advised that inmate contact was an essential function of her job pursuant to her job description, and that there were no openings meeting her restrictions.  Def. Ex. B.  Plaintiff subsequently completed an FMLA application, which stated that she was having foot surgery on April 2, 2008 and needed to be off of her foot with no inmate contact.  Def. Exs. E-F; H.

On April 21, 2008, Plaintiff provided Pastor with a second doctor's note from Dr. Kosanovich, stating that Plaintiff had been under his care for foot surgery from March 19, 2008 to May 24, 2008, and was limited to "light duty - no inmate contact."  Def. Ex. J.  Plaintiff was again informed that Defendant was unable to accommodate her request for light duty, that inmate contact was an essential function of her job, and that there were no openings meeting her restrictions.  Def. Ex. K.  Dr. Kosanovich authored a third note on May 29, 2008, stating that

2

Plaintiff needed to be off her right foot, on light duty, with no inmate contact until June 9, 2008. Def. Ex. L.

Plaintiff was released to return to work with no limitations by Dr. Kosanovich on June 9, 2009, and she returned to work on June 10, 2008. Pl. Ex. 4 ¶ 35; Def. Exs. N; BB ¶ 16. It is undisputed that Plaintiff was not provided with any accommodations, and she performed all of the CO job functions, including unrestricted contact with inmates. Def. Ex. BB ¶ 16.

Plaintiff continued to work without restrictions until on or about July 2, 2008. Pl. Ex. 4 ¶ 36. She claims she stopped working due to foot swelling and elevated blood pressure. Pl. Ex. 4, ¶ 37. Plaintiff averred that she hand delivered a doctor's note to Pastor's secretary in early July 2008 restricting her to light duty work. Pl. Ex. 4 ¶¶ 39-40. Plaintiff further averred that she was informed by the Deputy Warden that she could remain off work indefinitely as long as she remained under a doctor's care. Pl. Ex. 4 ¶¶ 43-45.[4]

On September 15, 2008, Plaintiff provided Pastor with a doctor's note from Dr. Daniel Janiak stating that she was restricted to light duty with no inmate contact from September 13, 2008 to December 30, 2008. Pl. Ex. 4 ¶ 46; Def. Ex. R. Plaintiff was subsequently terminated effective September 16, 2008 due to her inability to return to work with a full duty release. Def. Ex. S.

Plaintiff commenced this action against Defendant on January 20, 2011. [ECF No. 1]. Defendant filed a Motion for Summary Judgment on December 4, 2012. [ECF No. 40]. Oral argument was held on June 26, 2013 [ECF No. 61], and the matter is now ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "To demonstrate that no issue is in dispute as to any material fact, the moving party must

---

[4] Defendant disputes these contentions. According to the Defendant, Plaintiff continued to work until June 26, 2008 when she failed to report to work and called off "sick." Def. Ex. BB ¶ 14. Thereafter, Plaintiff reported herself as "sick" on June 27, 2008 and June 28, 2008. Def. Ex. BB ¶ 14. Defendant claims that beginning on June 29, 2008, Plaintiff stopped calling in, failed to report to work, and never provided a doctor's excuse. Def. Ex. BB ¶¶ 17-18. These factual disputes are not material, however, in light of our disposition of the Plaintiff's claim on timeliness grounds.

3

show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

To survive the motion, the non-moving party must go beyond its pleadings and point to specific facts which demonstrate that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. An issue is considered "genuine" only if there is a sufficient evidentiary basis such that a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the action under governing law. *Id*. In adjudicating a Rule 56 motion, we view the underlying facts and all reasonable inferences arising therefrom in the light most favorable to the party opposing the motion—here, the Plaintiff. *McCabe*, 494 F.3d at 424; *Fasold v. Justice*, 409 F.3d 178, 180 (3d Cir. 2005).

### III.   DISCUSSION

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance … ." 29 U.S.C. § 794(a). The Act "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement." *Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996). To establish a claim for disability discrimination under the Rehab Act, a plaintiff must demonstrate that: (1) she has a disability; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Williams v. Philadelphia Housing Auth. Police Dept.*, 380 F.3d 751, 761 (3d Cir. 2004); *Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000).

Plaintiff claims that the Defendant discriminated against her by failing to make reasonable accommodations for her alleged disability. An employer discriminates against a

qualified individual when it fails to make reasonable accommodations to the known physical or mental limitations of such individual unless the employer can demonstrate that such accommodation would impose an undue hardship on the operation of its business.  42 U.S.C. § 12112(b)(5). [5]  "Reasonable accommodation" includes such measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, … and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).

Defendant moves for summary judgment on the basis that, *inter alia*, the Plaintiff's claim is time-barred.  The Rehab Act does not specify a governing statute of limitations; therefore, a federal court adopts the statute of limitations of the most analogous state law cause of action.  *Wilson v. Garcia*, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 85 L.Ed.2d254 (1985).  In *Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 208 (3d Cir. 2008), the Third Circuit held that Pennsylvania's two-year statute of limitations for personal injury claims applied to claims asserted under the Rehab Act.  Plaintiff argues, however, that because her accommodation claim is based on a failure-to-transfer theory, it is subject to the four-year limitations period under 28 U.S.C. § 1658, which provides, in pertinent part:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a).

In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), the Supreme Court applied a four-year statute of limitations for hostile work environment, wrongful termination and failure-to-transfer claims brought under 42 U.S.C. § 1981.  The Supreme Court noted that prior to the 1991 amendment, claims under § 1981 were confined to those based on the formation of a contract, and did not protect against harassing conduct that occurred after the formation of the contract.  *Id*. at 372-73.  The 1991 amendment,

---

[5] The standards used in determining whether the Rehab Act has been violated are the same as those applied under Title I of the Americans with Disabilities Act.  29 U.S.C. § 794(d); *McDonald v. Pa. Dep't of Pub. Welfare*, 62 F.3d 92, 96 (3d Cir. 1995) ("Whether the suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.").

however, extended protection to claims based on discriminatory treatment after the formation of the contract. *Id*. at 373. The Supreme Court held that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990-and therefore is governed by § 1658's 4-year statute of limitation-if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." *Id*. at 382.

Following *Jones*, the Third Circuit in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), held that § 1658's four-year statute of limitations applied to a claim of employment discrimination under the Rehab Act based on allegations that the plaintiff's employer failed to transfer her to a different position prior to eliminating her current position. *Id*. at 206. In *Fowler*, the plaintiff was injured on the job while employed as a janitor/housekeeper. *Id*. She was released by her doctor to perform sedentary work, and defendant provided her with a light duty clerical position. *Id*. The clerical position was subsequently eliminated, and plaintiff alleged that she applied for a telephone operator position, as well as a number of vacant, sedentary jobs, but was never contacted by the defendant regarding any open positions. *Id*. at 212. She alleged that the defendant terminated her because she was disabled, and discriminated against her by "failing to transfer or otherwise obtain vacant and funded job positions" for her. *Id*.

The district court applied the two-year statute of limitations and dismissed the plaintiff's case as untimely. *Id*. In reversing the district court's dismissal, the Third Circuit observed:

> The Rehabilitation Act, originally enacted in 1973, provides that "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a). This general prohibition against disability-based discrimination by recipients of federal funding was in effect well before December 1, 1990. Employers were required to make "reasonable accommodation" for a disabled employee's limitations. *See Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1383 (3d Cir. 1991). Employers were not required to transfer a disabled employee to a vacant position as an accommodation of his or her disability. *See School Board of Nassau County v. Airling*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d

>
> 307 (1987). This changed, however, with the enactment of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.
>
> The ADA identified the reassignment of a disabled employee to a vacant position as a "reasonable accommodation" of an employee's disability. 42 U.S.C. § 12111(9). Under the ADA's Title I, an employer's failure to transfer a disabled employee to a vacant position constitutes discrimination. *Id.* After the ADA went into effect, Congress amended the Rehabilitation Act by incorporating the ADA's substantive standards for determining whether a covered employer has engaged in illegal discrimination. This conforming amendment was codified at 29 U.S.C. § 794(d), …. This provision of the Rehabilitation Act was signed into law on October 29, 1992. The standards for determining whether a covered employer has violated § 794(d) have been coextensive with the standards for determining whether a covered employer has violated the ADA ever since. Therefore, employers who are covered under § 794(a) of the Rehabilitation Act are required to transfer a disabled employee to vacant positions for which she is qualified where necessary to accommodate her disability. Since failure-to-transfer claims can be brought as a result of this statutory amendment—an amendment enacted after December 1, 1990—they are subject to a four-year limitation of actions.

*Fowler*, 578 F.3d at 208 (internal citation and footnote omitted).

Here, the critical questions are whether the Plaintiff's claim is properly viewed as a failure to reasonably accommodate her in her existing CO position, or, whether the record supports the conclusion that it is based on a failure to transfer or reassign her to a vacant position. Plaintiff concedes that if it is the former, the two-year statute of limitations would bar her claim. [ECF No. 66] p. 18. At oral argument, Defendant's counsel articulated the basis for the Defendant's contention that the two-year statute of limitations applies:

> MS. SCOTT: … Here, all the evidence is, and if you read plaintiff's affidavit and you also read the documents that have been supported, the transfer, the thing that plaintiff is trying to call a transfer, is being assigned as a level one correctional officer of the first floor of the jail. That's a correctional officer position. It's a position that she did before when she was on a work comp, light-duty assignment. It's not a transfer to a different position. It doesn't put her in a different pay bracket, it doesn't change anything about her job, except it says you sit here rather than going into see a jail inmate. So it cannot be a transfer. If this court were to adopt the interpretation that plaintiff wants, which is basically every single time you make an accommodation, that's a transfer, it would undermine the very meaning of the Rehabilitation Act. Because the Rehabilitation Act has these

>components that say you have to accommodate people first within their own position if they need an accommodation.  And if you're not able to do that and if the employee wants to and are willing to, you have to include a request to transfer to a different position. … [F]rom the record that we have here, this woman was a correctional officer, she wanted light duty.  As a correctional officer, that cannot be interpreted as a request to transfer.
>
>THE COURT:  In broad brush, a failure to accommodate is subject to a two-year statute of limitations?
>
>MS. SCOTT:  A failure to accommodate within that job, such as giving someone light duty or restricting their contact to inmates, that's what she asked for, that has to be a correctional officer position subject to the two-year statute.

[ECF No. 66] pp. 31-32.  Plaintiff contends, however, that a transfer or reassignment means "to do anything other than the job you were performing." *Id*. at pp. 17-18.

We begin by observing that "reassignment to a vacant position" as a form of an accommodation denotes movement to a position different from the position the employee previously held.  *See, e.g.*, *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161 (10th Cir. 1999) ("The term 'reassignment to a vacant position' indisputedly indicates more than just an alteration to the employee's existing job.").  Here, there is no evidence that the Plaintiff sought to be reassigned or transferred to a position other than one performed by CO's.  *See, e.g.*, *Stine v. Pa. State Police*, 2012 WL 959362 at *5 (M.D.Pa. 2012) (holding that the two-year statute of limitations applied to the plaintiff's Rehab Act claim, since the plaintiff did not request the accommodation of a transfer, finding that "[t]he focus of his request was help in performing his current and future jobs, not a transfer in and of itself").  Because Plaintiff's claim, properly characterized as a failure to accommodate her in her existing CO position, was actionable under the original version of the Rehab Act, the four-year statute of limitations set forth in 28 U.S.C. § 1658 does not apply, and Plaintiff's claim is subject to the two-year statute of limitations.  It is undisputed that Plaintiff was terminated on September 16, 2008.  The instant action was not filed until January 20, 2011.  Accordingly, her claim is untimely and Defendant is entitled to summary judgment.

## IV.  CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARMELLA GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-17 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF ALLEGHENY, PA (ALLEGHENY COUNTY JAIL) | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

AND NOW, this 16th day of August, 2013, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [ECF No. 40] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, County of Allegheny, PA (Allegheny County Jail), and against Plaintiff, Carmella George.

The clerk is directed to mark the case closed.

                                                      s/ Sean J. McLaughlin
                                                        Chief United States District Judge

cm:    All parties of record